UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| TINA KIMBRIL,         } | |
|                       } | |
|    Plaintiff,         } | |
|                       } | |
| v.                    } | Case No.: 5:20-cv-02066-RDP |
|                       } | |
| KILOLO KIJAKAZI,      } | |
| ACTING COMMISIONER OF SOCIAL } | |
| SECURITY,             } | |
|                       } | |
|    Defendant.         } | |

## MEMORANDUM OF DECISION

Plaintiff Tina Kimbril brings this action pursuant to section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI"). *See* 42 U.S.C. § 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

Plaintiff filed her application for SSI on March 5, 2019, alleging a disability onset date of December 31, 2004, which was later amended to March 15, 2019.  (Tr. 41–42, 83, 183). The Social Security Administration initially denied Plaintiff's application on June 13, 2019. (Tr. 83–103). On August 15, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 119). Plaintiff's request was granted and a hearing was held on January 14, 2020.[1] Plaintiff, her attorney, and a Vocational Expert ("VE") were in attendance.  (Tr. 31–74). On April 13, 2020, the ALJ issued a decision unfavorable to Plaintiff, denying her disability

---

[1] It was during this hearing that Plaintiff amended her alleged onset date of disability to March 15, 2019. (Tr. 41–42).

benefits. (Tr. 15–25). After the Appeals Council denied Plaintiff's timely request for review, the ALJ's decision became final, and therefore, subject to appellate review by this court. (Tr. 1–6).

At the time of the hearing, Plaintiff was fifty-two years old. (Tr. 46). Plaintiff testified that her highest grade of education attained was one day in the sixth grade. (*Id*.). Plaintiff has no past relevant work, or work that would appear to be substantial gainful activity ("SGA"). (Tr. 69). Plaintiff alleges that she is disabled due to Post Traumatic Stress Disorder ("PTSD"), Depression, Anxiety, Rheumatoid Arthritis ("RA"), Spondylitis Cervical Disorder, Hepatitis C, stomach issues, GERD, and arthritis in her hands, knees, neck, spine, and back, as well as having screws in her neck. (Tr. 42–44, 244).

During the hearing on January 14, 2020, Plaintiff testified that she has difficulties with concentrating, occasional hallucinations, anger problems, panic attacks, crying spells, drug addiction, chronic pain, sleeping, degenerative disc disease, degenerative joint disease, headaches, and balancing. (Tr. 42–44). Plaintiff further testified that she has problems with her range of motion—namely, turning her head side to side, moving her head up and down, and handling things. (Tr. 43, 57–58). Plaintiff stated that she also has problems sitting, standing, walking, and basically doing anything around the house. (Tr. 44, 59).

As for her abilities, Plaintiff testified that she can read, write, and do simple math. (Tr. 48). And, although Plaintiff can drive, she testified that she only drives occasionally because her license is expired.[2] (Tr. 48–49). Plaintiff also stated that she can only walk or sit for a few minutes at a time, and that she prefers to lay down. (Tr. 63–64). Plaintiff testified that she can barely lift a gallon of milk and does not help with household chores aside from washing a few dishes. (Tr. 64). To entertain herself, Plaintiff explained that she does word search puzzles, reads, and occasionally sews on her sewing machine. (Tr. 66). Plaintiff further testified that she

---

[2] Despite her expired license, the record indicates Plaintiff drove herself to the hearing. (Tr. 49).

frequently listens to music and occasionally watches television, but it is hard for her to concentrate. (*Id.*). Finally, Plaintiff testified that she has not consumed alcohol or drugs in two years, but she does smoke at least half a pack (or more) of cigarettes per day. (Tr. 67).

Prior to filing her SSI application on March 5, 2019, Plaintiff had been receiving SSI benefits for approximately fifteen years until October 17, 2016. (Tr. 85). These benefits were terminated due to Plaintiff's incarceration in the county jail. (Tr. 41). Upon her release from jail, Plaintiff was admitted into a drug rehabilitation center where she stayed from September 2017 until December 2017. (Tr. 42, 365–70). Plaintiff's attorney testified that Plaintiff has been drug free since her release from rehab. (*Id.*). In May 2019, during a medical evaluation, Plaintiff stated she had been free from methamphetamine use for eight months. (Tr. 853). And, during her January 14, 2020 hearing, Plaintiff testified that she had been free from methamphetamine use for two years. (Tr. 67). However, Plaintiff's lab results from Cullman Regional Medical Center in June 2018 revealed she was positive for Methamphetamines, Opiates, Amphetamines, and Benzodiazepines. (Tr. 686). Additionally, her labs from December 2019 revealed she was positive for Methamphetamines and Amphetamines. (Tr. 905).

Although there are no medical records on Plaintiff's surgical history prior to 2013, Plaintiff testified that she underwent surgery on her neck for the first time in 2000. (Tr. 58). And Plaintiff's medical records confirm that on June 11, 2013, Plaintiff underwent a second surgery on her neck. (Tr. 320–21).

On September 12, 2017, while a patient at the Phoenix House, Plaintiff presented to Whatley Health Services complaining of neck pain. (Tr. 414). Aside from the neck pain, Plaintiff's physical assessment was normal, and she was advised to continue her pain medication.

(Tr. 417). During her visit, Plaintiff showed signs of moderately severe depression, and it was noted that she was currently taking medication for anxiety and depression. (Tr. 415).

On September 25, 2017, Plaintiff visited the emergency department at DCH Regional Medical Center complaining of neck pain that worsened when "turning her neck." (Tr. 348). No findings of concern were noted. (Tr. 351). Plaintiff was instructed to use an over the counter TENS unit and return if her condition worsened. (Tr. 354).

Two days after her visit to the emergency room, Plaintiff returned to Whatley Health Services, complaining that her neck pain had worsen. (Tr. 432). Plaintiff was advised to start physical therapy and continue her medication for depression. (Tr. 433–34). A month later, Plaintiff returned again complaining of neck pain. (Tr. 444). Imaging of Plaintiff's neck reveled no cervical fracture, no significant neural impingement, and no hardware failure. (Tr. 339–40, 447). Accordingly, Plaintiff's next course of action was to perform at-home exercises once or twice per day. (Tr. 451). Plaintiff was continued on her medication for depression. (Tr. 452).

Plaintiff visited Whatley Health Services for the last time on November 8, 2017. (Tr. 453). During that visit, Plaintiff stated her neck pain was chronic and that the prescribed medication she had been taking, as well as seeing a chiropractor, gave her no relief. (*Id.*). Plaintiff was prescribed Naproxen and advised to continue her medication for depression. (Tr. 455).

From December 2017 to March 2019, Plaintiff received care from Quality of Life Health Services for Hepatis C, GERD, depression, anxiety, and neck pain. (Tr. 781, 789, 796, 802, 810, 814, 816). Plaintiff was prescribed medication or treatment for her neck pain, depression, and anxiety. (Tr. 787, 795–95, 800–01, 808, 816). Notably, at each visit Plaintiff's mood and

orientation of time, place, person, and situation was consistently deemed "normal" and "appropriate." (Tr. 786, 793, 800, 807–08, 816).

On May 17, 2018, Plaintiff was transported by ambulance to Cullman Regional Medical Center with complainants of abdominal pain. (Tr. 656). Plaintiff was found to have no acute cardiopulmonary abnormality, but moderate to serve stool retention, consistent with constipation. (Tr. 655). Plaintiff was discharged home that day. (*Id.*). On May 25, 2018, Plaintiff returned complaining of neck pain. (Tr. 672). Plaintiff was diagnosed with acute pain and neck muscle strain. (Tr. 678). Plaintiff was sent home the same day with a prescription for Ibuprofen. (Tr. 673). Plaintiff returned to Cullman Regional Medical Center over the. next few months complaining of abdominal pain, neck pain, headaches, and chest pain respectively. (Tr. 673, 699, 710, 722). Each visit, Plaintiff was discharged the same day. (Tr. 687, 701, 712, 725–26). During Plaintiff's last visit to Cullman Regional Medical Center, her primary complaint was abdominal pain, and she was released the same day with medication to treat her pain. (Tr. 737, 742).

Finally, in May 2019, Plaintiff visited Dr. Bharat Vakharia complaining of neck pain. (Tr. 847). At this visit, Dr. Vakharia found Plaintiff had minimal limitations in her range of motion, and she functioned relatively well or normal in all other areas—namely, her hips, handgrip, and gait.[3] (Tr. 846–50). Plaintiff also visited Jack Bentley, Ph.D. during this time. (Tr. 853). Dr. Bentley reported that Plaintiff had no limitations in her receptive and expressive communication skills, her memory was intact, and her mood was moderately dysphoric and congruent with her affect. (Tr. 854).

---

[3] It should be noted, however, that Dr. Vakharia also found that Plaintiff cannot squat more than 60 degrees. (Tr. 846).

**II.     ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If these criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant

is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 5, 2019—the alleged onset date of her disability. (Tr. 17).  Moreover, the ALJ found that Plaintiff had the following severe impairments: Degenerative Disc Disease, Depression, Anxiety, PTSD, and substance addiction disorder.  (Tr. 18).

The ALJ determined that Plaintiff's degenerative disc disease did not meet the requirements of Listing 1.4 because the evidence fails to show "nerve root compression, consistent limitation of motion of the spine, motor loss[,] . . . sensory or reflex loss[,] or [a] positive straight leg test." (*Id.*). The ALJ also determined that Plaintiff's "mental impairments, singly or in combination," did not meet the requirements of Listings 12.02, 12.06, and 12.15. (*Id.*). In reaching her decision, the ALJ considered the "Paragraph B" criteria by evaluating the opinion of Jack Bentley, Ph.D., the report of state agency psychiatric consultant Robert Estock M.D., and Plaintiff's statements and treatment history. (Tr. 18–19). The ALJ also found that the "Paragraph C" criteria is not satisfied because there was "no evidence of marginal adjustment." (Tr. 19).

After careful consideration of the evidence, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the

record. (Tr. 23). Further, during the hearing the VE testified that in her opinion, Plaintiff's ability, education, and age allow her to perform jobs in the national economy that exist in significant numbers such as marker, cleaner, or router. (Tr. 70).

As a result, the ALJ determined that Plaintiff has neither an impairment, nor a combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 15). The ALJ determined that Plaintiff has the RFC to perform light work with the following limitations:

> can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk, with normal breaks, for a total of 6 hours in an 8-hour workday. She can sit, with normal breaks, for a total of 6 hours in an 8-hour workday; pushing and pulling limits are the same as for lifting and carrying. The [plaintiff] can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. She can frequently balance and occasionally stoop, kneel, crouch, and crawl. She can frequently handle, finger, and feel with the bilateral upper extremities and can frequently reach overhead and in all other directions with the bilateral upper extremities; can frequently turn her head from side-to-side and up and down. She should avoid concentrated exposure to extreme cold, humidity, and vibrations. She should avoid all exposure to hazards such as moving, underground machinery and unprotected heights. The [plaintiff] can understand, remember and carry out short, simple instructions and can concentrate for 2-hour periods to complete and 8-hour workday. She can occasionally interact with the public., co-workers and supervisors; and she can adapt to. Infrequent, well-explained changes in the workplace.

(Tr. 23).

Because of Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, and therefore, she has not been under a disability as defined in the Act since March 5, 2019. (Tr. 24–25).

## III. Plaintiff's Argument for Remand or Reversal

Plaintiff argues that substantial evidence does not support the ALJ's findings that her statements concerning the intensity, persistence, and limiting effects of her medical conditions are inconsistent with the medical evidence and other evidence. (Doc. #12 at 17–23). Plaintiff also argues that this court has subject matter jurisdiction to consider any issue relating to her prior applications for SSI. (*Id.* at 23–31).

## IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

The threshold for what constitutes substantial evidence "is not high." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against

9

the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

**V.      Discussion**

After careful review, the court concludes that the ALJ did not err in his findings or conclusions.

###### A.     Substantial Evidence Supports the ALJ's Finding that Plaintiff's Subjective Statements are Inconsistent with Other Evidence on the Record

Plaintiff contends that the ALJ erred in holding that her statements concerning the intensity, persistence, and limiting effects of her medical conditions are inconsistent with the medical evidence and other evidence. (Doc. #14 at 33). But her argument misses the mark.

In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). *See also* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); SSR 16-3p, 2016 WL 119029 (Mar. 16, 2016). So long as the initial burden is satisfied, the ALJ will evaluate the intensity and persistence of the claimant's alleged symptoms and the effect of those on the claimant's ability to work. *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). In making such an evaluation, the ALJ will consider the objective medical evidence, the nature of the claimant's symptoms, the claimant's daily activities, any precipitating and aggravating factors, the effectiveness of medication, treatment sought for relief of symptoms, any measures the claimant

takes to relieve symptoms, and *any inconsistencies* between the claimant's statements and the rest of the record. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4) (emphasis added).

An ALJ must clearly "articulate explicit and adequate reasons" to discredit a claimant's statements. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). However, on appeal, generally "[t]he question is not . . . whether [the] ALJ could have reasonably credited the claimant's testimony, but whether the ALJ was *clearly* wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir 2011) (emphasis added). Thus, courts in our Circuit will not disturb a clearly articulated finding discrediting a claimant's statements so long as the finding is supported by substantial evidence. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014). Here, Plaintiff claims that the ALJ's decision is due to be reversed because the ALJ erred in finding her subjective statements inconsistent with the medical evidence and other evidence on record. The court disagrees.

The ALJ noted that the impairments Plaintiff claims to cause her underlying medical condition could reasonably be expected to cause her alleged symptoms. (Tr. 23). Nonetheless, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not entirely consistent with the medical evidence and nonmedical evidence in the record. (*Id.*). In support of this decision, the ALJ evaluated the objective medical evidence and Plaintiff's treatment history and daily activities. (Tr. 20–24).

The ALJ found that the record did not include objective medical evidence nor any other evidence showing Plaintiff's impairments were as limiting as she testified. (Tr. 23). The ALJ specifically examined the treatment notes and diagnostic studies from Whatley Health Services, DCH Regional Medical Center, Quality of Life Health Services, Cullman Regional Medical Center, Jack Bentley, Ph.D., Dr. Robert Estock, and Dr. Bharat Vakharia. (Tr. 20–24). Citing

11

specific evidence in the record, the ALJ concluded that Plaintiff's treatment notes did not support a finding of disability. And, in addition to the objective medical evidence and treatment history, the ALJ specifically accounted for Plaintiff's daily activities and subjective statements as well. (Tr. 20–21).

The ALJ did not give controlling weight to any prior medical opinions or administrative medical findings, and found the treatments notes from Plaintiff's physical exams and diagnostic studies revealed no physical abnormalities that would indicate that Plaintiff was severely disabled. (Tr. 21–22). Specifically, the ALJ held that although Plaintiff complains of neck pain, numbness, and tingling in her hands, her extremities were consistently found to be of normal strength and range of motion. (Tr. 23). The ALJ also held that any findings on Plaintiff's mental conditions were unremarkable treatment notes that illustrated that she actually was alert and oriented to time, place, person, and that her situation and her mood and affect were normal and appropriate. (Tr. 22–23). The ALJ noted that Plaintiff's mental conditions appeared to be sufficiently treated with medication because she has sought no other mental health treatment since December 2017. (Tr. 23). The court concludes the ALJ's determination is supported by substantial evidence.

      **B.**    **The Court Cannot Consider the Reopening of Plaintiff's Prior Claims**

Plaintiff next argues this court has subject matter jurisdiction to reopen the agency's 2016 determination to terminate her previous SSI. Plaintiff's position is even if she would have exhausted her administrative remedies in 2016, the ALJ's decision would be powerless as there were issues with the Appointment Clause at that time. (Doc. #12 at 23–31). However, the court determines it lacks jurisdiction to review that six-year-old agency determination.

The Eleventh Circuit provides that "[g]enerally, courts do not have jurisdiction over the [ALJ]'s decision to not reopen a claim since such a refusal is not a final decision within the meaning of 42 U.S.C. § 405(g)." *Loudermilk v. Barnhart*, 290 F.3d 1265, 1268 (11th Cir. 2002), *reh'g and reh'g en banc denied*, 52 F. App'x 489 (11th Cir. 2002). But, where a Plaintiff has failed to exhaust her administrative remedies, subject matter jurisdiction to review an ALJ's decision exists only if "(1) a colorable constitutional claim is raised; or (2) the decision is reconsidered to any extent at any administrative level." *Id.* Reopening a prior claim is "an extraordinary measure, affording the opportunity of a second excursion through the decision-making process and should be allowed only for specific and substantial reasons afforded in accordance with the Commissioner's regulations." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1238 (11th Cir. 1983).

Plaintiff concedes that she did not exhaust her administrative remedies, and thus, the 2016 decision to terminate her SSI was never reconsidered at any administrative level. (Doc. #12 at 26). Rather, Plaintiff avers this court has subject matter jurisdiction because exhaustion of her administrative remedies was futile, and she has a colorable constitutional claim under the Appointment Clause. *See Carr v. Saul*, 141 S. Ct. 1352 (2021). Indeed, when the Supreme Court decided *Carr*, it wrote "[w]here claimants are not expected to develop certain issues in ALJ proceedings, it is generally inappropriate to treat those issues as forfeited." 141 S. Ct. at 1358 n.3. However, Plaintiff's argument is grounded in a set of hypothetical facts, and subject matter jurisdiction cannot be grounded in a set of hypothetical facts.

Plaintiff first assumes that the agency's decision on October 17, 2016, was a decision to terminate her benefits. (Doc. #12 at 15). She further assumes that if she would have requested to reopen this decision in 2016 and if, in turn, the agency later denied that request, then the

13

agency's decision would have been brought before an improperly appointed ALJ. (*Id.* at 29). Plaintiff is correct to note that in this hypothetical situation exhaustion of her administrative remedies would be futile because of the Appointment Clause. But, Plaintiff is wrong to assume that exhaustion would also be futile now merely because exhaustion would have been futile in 2016 when the agency decided to terminate her benefits.

In fact, there is nothing in the record to suggest that an improperly appointed ALJ ever ruled over Plaintiff's claim or that Plaintiff's failure to reopen her claim in 2016 was motivated by the Appointment Clause. Therefore, Plaintiff has failed to present a sufficient basis to excuse her failure to exhaust her administrative remedies in relation to her 2016 termination decision, and as a result, this court lacks subject matter jurisdiction to reopen such claim.

## VI.    Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is, therefore, due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this February 22, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE